Hillsborough, }
 June, 1900. }

### LISCOMB v. MANCHESTER & LAWRENCE RAILROAD.

### MANCHESTER & LAWRENCE RAILROAD v. LISCOMB & a.

Certain evidence considered sufficient to show an intention to make a present gift of certificates of stock, and a delivery thereof to the donee.

The possession of certificates of stock by the transferee thereof is *prima facie* evidence of title, and conclusive unless impeached or explained.

In an action to establish a gift of personalty, evidence as to the pecuniary condition of the donor is competent.

Subsequent declarations are inadmissible to prove an antecedent state of mind.

THE FIRST CASE is assumpsit and trover, to recover for the defendants' refusal to transfer fifteen shares of their capital stock standing in the name of Eliphalet S. Nutter and indorsed to the plaintiff, the transfer being refused because Nutter's executrix notified the railroad that the stock was the property of the estate. THE SECOND CASE is a bill of interpleader filed by the railroad immediately after the suit at law was brought. After answers were filed, an order was made that the issue of whether Nutter gave the stock to Liscomb be framed and tried by the jury with the action at law. Early in the trial, counsel agreed that the answer to this question might be treated as a sufficient verdict to dispose of both cases. Upon this issue a verdict was returned in favor of Liscomb.

The plaintiff's evidence tended to prove the following facts: Eliphalet S. Nutter of Concord was left a widower in January, 1896, at the age of seventy-seven years. He was a remarkably well-preserved man, of active habit and strong will. He had a considerable fortune, and was sharp in his financial dealings, although he gave away considerable sums. The plaintiff is the widow of a former professor in Brown University, and met Nutter at the home of her husband's parents in Chichester. He was greatly enamored of her, procured her address from a neighbor, wrote her many letters, visited her at Chichester, and invited her to visit at his home. Early in March, 1897, at his request she moved her goods from Providence to his house in Concord. March 13 he was taken dangerously ill, and for a time his life was despaired of; but he understood what was going on around him, and was competent to do business. During this sickness, and on the day when it was claimed the stock was given to the plaintiff, his nephew Charles E. Cox saw him sitting up in bed and

attempting to write on the back of what appeared to be a certificate of stock, resembling one of the certificates in question. Mrs. Liscomb was present, assisting or waiting upon him. Nutter said to her, "I can't make it go," meaning the pen. She thereupon took the pen, dipped it in ink, and gave it back to Nutter, who finished his writing, gave her the pen, the paper, and whatever he had to write upon, and said, "It is all right now." Thereupon she took this and other papers and left the room. Nutter then said to Cox that he expected to be out again shortly. He recovered from this illness so as to go on visits to neighboring towns. The next May dividend upon the stock ($75) was sent to Nutter by mail. He indorsed the check, and the plaintiff also indorsed it and cashed it. At this time he was not able to be out. The November dividend check was cashed by Nutter. The plaintiff produced at the trial an envelope marked in Nutter's handwriting "Manchester & Lawrence dividend $75," containing $75 in bills, among which were two or three which were issued from the bank where the check was cashed, not earlier than October 22, 1897, and which appeared never to have been in circulation; but there was no evidence to show when this came into her possession. During his lifetime Nutter was frequently seen with the plaintiff, and said that they were to be married, that he had given her a part of his property, and purposed to give her more. From the time the plaintiff came to his house, early in March, she lived there as a member of the family until and for two or three weeks after his death. After his decease she had in her possession the certificates representing the stock in question, the indorsement being filled out in her handwriting and signed by Nutter. One of the signatures was imperfect, having something the appearance that might be given by trying to write with a pen not sufficiently filled. She also had the envelope above referred to, and notes for about $3,000, payable to and indorsed by Nutter. The plaintiff wrote letters to Nutter, but none of them were produced, and there was no evidence that Nutter kept them, or that they were in existence.

The executrix moved for a nonsuit upon the following grounds: (1) Because there was no evidence from which the jury could properly find that there was a delivery of the stock in controversy to Liscomb in Nutter's lifetime as a gift to her *inter vivos ;* (2) because upon the evidence, if there was a gift to the plaintiff of the stock in question, it was *de causa mortis*, and as such was invalid under the statute requiring proof of the transaction. The motion was denied, subject to exception. The executrix also excepted to the admission of evidence of the amount of Nutter's property, and to the exclusion of his statements, made at a later date, that in March he thought he was going to die.

The defendants' evidence tended to prove the following facts: After the death of Nutter's wife, Sarah W. Blanchard presided in his household. She was the sister of his wife, and lived with them, and as a daughter, after the death of their only child in 1865. Shortly after Mrs. Nutter's death, Nutter made his will, by which he gave $200 each to a large number of nieces and nephews, a few thousand dollars to various charities, and the remainder to Sarah. From March 13 to March 22, 1897, he was unable to sit up or transact any business. He kept his valuables in a safe, the combination to which was known only to himself and Sarah; but there was no evidence that Sarah, at any time after Mrs. Liscomb came to Nutter's house, opened the safe for any purpose. During Nutter's sickness he stated to the foreman in charge of his factory that he did not expect to go to the factory again.

At the close of the evidence, the executrix excepted to the denial of her motion that a verdict be directed for her. Nutter died November 14, 1897. The plaintiff presented the certificates of stock to the treasurer of the Manchester & Lawrence Railroad for transfer, November 24, 1897.

In the closing argument for the executrix, after speaking of the law of this state as to testimony of the parties, counsel said that it must also appear to the jury that in this case the executrix had little or no knowledge of the facts in controversy. In the argument for the plaintiff, after commenting upon the claim that Mrs. Liscomb imposed upon Nutter, and that she cared nothing for him, counsel said: "They present this claim. Why do they not present her letters?"

Mr. Branch: "I object."

Mr. Taggart: "Mr. Branch in his argument said Miss Blanchard knew nothing about it. Is he going to argue, when he says that Miss Blanchard knew nothing about it, that I can have nothing to say with reference to that?"

The executrix excepted to the foregoing, and also to the following:

Mr. Taggart: "There is some evidence in this case that no one knew the combination to this safe except Mr. Nutter and Miss Blanchard. [Turning to Miss Blanchard.] You are the one that got them for him. You are the one that went down to the safe and brought up these papers."

Mr. Branch: "To that statement we object."

Mr. Taggart: "Who else could have gone down and got them? It is in evidence here that those two are the only ones who knew the combination of the safe. There is not a lisp, not a syllable of evidence, that that woman [referring to Mrs. Liscomb] knew the combination. Could he have told her the combination while lying

there sick in bed? Could any one of you gentlemen, as business men, have gone down there and turned that combination right, simply upon instruction of Mr. Nutter upstairs? It was Miss Blanchard who brought those papers to Mr. Nutter, I submit."

*John H. Albin* and *Taggart & Bingham*, for Sarah A. P. Liscomb.

*Oliver E. Branch*, for the Manchester & Lawrence Railroad.

*Oliver E. Branch*, *Martin & Howe*, and *Streeter, Walker & Hollis*, for Sarah W. Blanchard, executrix.

BLODGETT, C. J.   We think there was competent evidence tending to show, on the part of the donor, both an intention to give the plaintiff Liscomb the certificates in question and of their delivery to her by him.   Taking this to be so, her possession of the certificates was *prima facie* evidence of property (*Jones* v. *Sinclair*, 2 N. H. 319, 320; *Pinkham* v. *Gear*, 3 N. H. 484), and therefore conclusive unless impeached or explained.   *Stevens* v. *Reed*, 37 N. H. 49, 53.   Whether such possession and the evidence of title which it furnished was impeached or explained in the course of the trial, it was the province of the jury to determine upon all the evidence before them; and, moreover, upon careful inspection of the record, we find nothing, either in the relations between the plaintiff and the deceased, or his physical or mental condition at the time of his alleged transfer of the certificates, or the circumstances attending it, which enables us to hold, as matter of law, that the verdict was erroneous; nor do we discover any legal error in respect of the admission or exclusion of evidence, or the denial of a nonsuit, or find cause to set aside the verdict on account of the statements of counsel in his argument.

*Exceptions overruled.*

PEASLEE, J., did not sit: the others concurred.